UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CAROLINO, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　Defendants. | Case No.:  3:20-cv-1535 W (DEB)<br><br>**ORDER (1) GRANTING MOTION TO DISMISS [DOC. 13] AND (2) REQUIRING FURTHER BRIEFING REGARDING STANDING** |

　　　Defendants City of San Diego, Jose Mendez and Brad Keyes move to dismiss and strike.  In response to the motion, Plaintiffs have filed a document entitled "CCP Declaration of David Carolino in Support of his Standing to Bring this Action as the Legal Heir of His Brother Dennis Carolino (CCP 337.32)."  (*D. Carolino Decl.* [Doc. 14].)

　　　The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS** the motion to dismiss [Doc. 13] and **ORDERS** Plaintiffs to provide further briefing regarding their standing to pursue wrongful death claims.

//

//

1

## I. FACTUAL BACKGROUND

According to the First Amended Complaint, on August 24, 2019 at about 7:50 p.m., Rose Dawson called 911 seeking assistance from the Psychiatric Emergency Response Team ("PERT").[1]  (*FAC* [Doc. 11] ¶ 8.)  Dawson reported that her nephew, Dennis Carolino (the "Decedent"), was "off his medications and had thrown a brick at her."[2]  (*Id.*)

Approximately 30 minutes later, Defendants San Diego Police Officers Jose Mendez and Brad Keyes responded and met Dawson at the front of her house.  (*FAC* ¶ 9.)  Dawson informed them that Dennis lived with her in a shed behind the house, was mentally ill and off his medications.  (*Id.*)  The officers told Dawson that PERT had been called and was on its way.  (*Id.* ¶ 10.)  The officers asked her to show them where Dennis lived because they decided to get him out of the shed.  (*Id.* ¶¶ 15, 16.)

Dawson led the officers to the back of the house and pointed out the small shed where he lived.  (*FAC* ¶ 15.)  At the time, it was dark and the officers used their flashlights to shine a light on the door of the shed.  (*Id.*)  The officers also told Dawson to stand behind them.  (*Id.* ¶ 16.)  Dennis, apparently blinded by the officers' flashlights, exited the shed while carrying what the officers believed was a shovel, but turned out to be "a stick or pole."  (*Id.* ¶ 17.)  One of the officers yelled at Dennis to "drop it," but he did not.  (*Id.*)  One officer then fired his taser at Dennis, while the other officer fired five or six shots from his service revolver, killing Dennis.[3]  (*Id.* ¶¶ 11, 18.)

---

[1] According to the FAC, PERT provides "emergency assessment and referral for individuals in behavioral health crises who come to the attention of law enforcement agencies through telephone calls or observation of police officers or others." (*FAC* ¶ 13.)

[2] Generally, individuals are referred to by their last name.  Because there are multiple members of the Carolino family involved in this motion, they will be referred to by their first name.

[3] The FAC first alleges Dennis was shot five times (*FAC* ¶¶ 11, 12) and six times (*see e.g. id.* ¶¶ 18, 30).

Plaintiffs Anthony Carolino and David Carolino are Dennis's biological brothers. (*FAC* 3:17–20.) According to the FAC, on January 17, 2020, they filed an administrative claim against Defendants "alleging civil rights violations by use of excessive force on Dennis Carolino, resulting in his death." (*Id.* ¶ 23.) The City denied the claim on or about January 29, 2020. (*Id.* ¶ 24.)

On July 2, 2020, Plaintiffs filed this lawsuit in the San Diego Superior Court asserting eight causes of action. On August 7, 2020, Defendants removed the case to this Court and then filed a motion to dismiss the Complaint. Among the issues Defendants raised was Plaintiffs' standing to pursue survival and wrongful-death claims. (*See Orig. MTD P&A* [Doc. 2-1] 4:24–7:24, 8:1–18.)

Plaintiffs filed an opposition to the motion which conceded the merits of many of Defendants' arguments, but sought leave to amend. (*See Opp'n to Orig. MTD* [Doc. 5].) Regarding the survival claims, Plaintiffs conceded they lacked standing and represented they did not intend to pursue any survival claims. (*Id.* 7:1–6.) As for the wrongful-death claims, Plaintiffs sought leave to amend to clarify they were Dennis's only surviving heirs and beneficiaries and, therefore, had standing. (*Id.* 7:7–19.)

On March 10, 2021, this Court issued an order granting Defendants' motion to dismiss as follows:

1. Plaintiffs' survival claims are **DISMISSED WITHOUT LEAVE TO AMEND**.
2. Plaintiffs' wrongful death claims are **DISMISSED WITH LEAVE TO AMEND**.
3. The claims for negligent infliction of emotional distress filed on behalf of Rose Dawson is **DISMISSED WITH LEAVE TO AMEND**.

(*MTD Order* [Doc. 8] 6:4–9.)

On March 24, 2021, Plaintiffs filed the FAC. On April 7, 2021, Defendants filed the current motion to dismiss the FAC or, alternatively, strike the request for punitive damages. In response, Plaintiffs filed a document entitled "CCP Declaration of David

Carolino in Support of his Standing to Bring this Action as the Legal Heir of His Brother Dennis Carolino (CCP 337.32)." (*D. Carolino Decl.*)  Aside from this document, Plaintiffs did not file an opposition addressing any of the arguments raised in Defendants' motion.

## II. LEGAL STANDARD

"It is well settled that federal courts may act only in the context of a justiciable case or controversy." SEC v. Medical Committee for Human Rights, 404 U.S. 403, 407 (1972) (quoting Benton v. Maryland, 395 U.S. 784, 788 (1969)).  In order to invoke the jurisdiction of the federal courts, a plaintiff "must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (citations omitted).  To do so, "a plaintiff needs to provide only 'a short and plain statement of the grounds for the court's jurisdiction.'  The plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (citing Harris v. Rand, 682 F.3d 846, 850–51 (9th Cir. 2012)).

Standing requires: "(1) an 'injury in fact' suffered by the plaintiff; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be 'redressed by a favorable decision.'" Civil Rights Educ. and Enforcement Center v. Hospitality Properties Trust, 867 F.3d 1093, 1098 (9th Cir. 2017) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  "A plaintiff has sustained an injury in fact only if she can establish 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Id. (citing Lujan, 504 U.S. at 560)).

### III. DISCUSSION

#### A. Failure to Oppose.

Civil Local Rule 7.1(f.3.c) provides that "[i]f an opposing party fails to file papers in the manner required by Local Rule 7.1(e)(2), that failure may constitute a consent to the granting of that motion or other ruling by the court." The Ninth Circuit has held that a district court may properly grant a motion to dismiss for failure to respond. See generally Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam) (affirming dismissal for failure to file timely opposition papers where plaintiff had notice of the motion and ample time to respond).

Here, Plaintiffs did not file an opposition disputing Defendants' arguments. Instead, Plaintiffs filed a document purporting to be a declaration under California Code of Civil Procedure § 377.32. For the reasons set forth in Defendants' Reply, the document is not a valid declaration and does not comply with the requirements of California law. (*See Reply* [Doc. 16] 4:5–5:25.) Accordingly, Plaintiffs have effectively failed to oppose Defendants' motion.

Relying on Civil Local Rule 7.1(f.3.c), the Court deems Plaintiffs' failure to oppose Defendants' motion as consent to the merits. For this additional reason, the Court will grant Defendants' motion to dismiss.

#### B. Plaintiffs lack standing to pursue survival claims.

Defendants argue the first, second, third, fourth, sixth and seventh causes of action are survival claims that should be dismissed because: (1) this Court previously dismissed the survival claims without leave to amend; (2) Plaintiffs failed to plead facts demonstrating standing to pursue survival claims; (3) Plaintiffs failed to exhaust administrative remedies; and (4) Plaintiffs failed to comply with California's statutory requirements for survival claims. (*P&A* [Doc. 13-1] 6:22–10:5.)

As discussed above, in response to Defendants' previous motion to dismiss, Plaintiffs represented that they did not intend to pursue survival claims. As a result, the

order dismissing the Complaint did not grant Plaintiffs leave to amend to assert survival causes of action. Thus, Plaintiffs attempt to include survival claims in the FAC exceeded the scope of the grant of leave to amend in the Dismissal Order.

Moreover, under California Code of Civil Procedure § 337.32, "a person who seeks to commence an action … as the decedent's successor in interest under this article shall execute and file an affidavit or declaration under penalty of perjury" which contains specific information. Here, Plaintiffs have failed to file a declaration satisfying section 337.32.

Finally, in order to sue the City, Plaintiffs must exhaust their administrative remedies. Cal. Gov't Code §§ 911.2, 945.4. Where claimants suffer separate and distinct injuries, one claimant may not rely on a claim presented by the other. Nguyen v. Los Angeles County Harbor/UCLA Medical Center, 8 Cal.App.4th 729, 733–34 (1992). Because Plaintiffs only alleged satisfying the administrative claim requirement with respect to their individual claims, the FAC fails to satisfy this requirement for any survival claims.

For all these reasons, the Court will dismiss the survival claims—the first, second, third, fourth, sixth and seventh causes of action—without leave to amend.

### C. The FAC fails to state a claim for negligent infliction of emotional distress.

Plaintiffs' fifth cause of action is for negligent infliction of emotional distress. Defendants argue this claim must be dismissed because the FAC's allegations establish they were not present when Dennis was shot. (*P&A* [Doc. 13-1] 15:18–16:15.) The Court agrees.[4]

---

[4] Defendants argue Rose Dawson failed to exhaust her administrative remedies. (*Reply* [Doc. 16] 6:20–23.) However, Rose Dawson is not identified as a plaintiff on the FAC's caption, nor is she identified as a plaintiff in the body of the FAC.

In Thing v. La Chusa, 48 Cal. 3d 644 (1989), the California Supreme Court explained that "[i]n the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff . . . is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim . . . ." Id. at 647.  Here, the FAC establishes that only the Defendant Officers, Rose Dawson and Dennis were present at the scene.  (*FAC* ¶¶ 8–19.)  Because Plaintiffs were not present, the FAC fails to state a claim for negligent inflictions of emotional distress.[5]

### D. The FAC sufficiently pleads a wrongful-death claim against Officer Keyes.

Plaintiffs' eighth cause of action is for wrongful death and is based on the allegation that Defendants use of force against Dennis was excessive.  Defendants raise three arguments regarding this cause of action.

First, Defendants argue Officer Mendez, who fired his taser at the Dennis, is not liable because "the Complaint does not describe the role of Officer Mendez in Decedent's death . . . ." (*P&A* 17:1–3.)  The Court agrees.

In the FAC's factual background, Plaintiffs allege the Dennis died as a result of the guns shots, which constituted excessive force:

> One of the Defendant police officers, realizing that deadly force was unnecessary fired his taser at Dennis and another officer fired six shots from his service revolver into the body of Dennis Carolino resulting in death.  It is unknown at this time which shot killed.  Shooting and killing Dennis Carolino by firing six shots at him was excessive and deadly force because

---

[5] Plaintiffs also allege emotional-distress damages in the first (*FAC* ¶ 32), fourth (*id.* ¶ 46) and seventh (*id.* ¶ 59) causes of action, presumably in an effort to convert those survival claims into wrongful death claims.  Because Plaintiffs were not present at the scene, they cannot recover emotional distress damages under those causes of action.  Moreover, because the emotional distress cause of action is based on the same underlying conduct as the first, fourth and seventh causes of action, they are duplicative.  For these additional reasons, dismissal of the first, fourth and seventh causes of action without leave to amend is warranted.

> he was not an immediate threat of inflicting serious bodily injury or death on either of the officers.

(*FAC* ¶ 18.) Similarly, under the wrongful-death cause of action, Plaintiffs allege only the shooting involved excessive force:

> Said shooting was unjustified and involved excessive and deadly force in violation of decedent's above-alleged constitutional rights despite the fact that the decedent did not pose an immediate threat of serious bodily injury or death to either officer. Dennis Carolino was unlawfully killed by Defendant police officers Mendez and Keyes when he was shot multiple times which shooting directly and proximately caused his death.

(*Id.* ¶ 64.) Because the FAC does not allege Officer Mendez's use of the taser constituted excessive force, the FAC fails to state a wrongful-death claim against him.

Defendants next contend the officers are immune from liability because the shooting was justified. (*Id.* 17:6–24.) With regard to Officer Mendez, the Court agrees that he is entitled to qualified immunity given the FAC's failure to allege he used excessive force against Dennis. As for Officer Keyes, the Court disagrees with Defendants' argument.

The wrongful-death cause of action is based at least in part on the contention that the officer used excess force against Dennis in violation of his Fourth Amendment rights. (*See FAC* ¶ 64.) In evaluating excessive-force claims, "courts ask 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Glenn v. Washington County, 673 F.3d 864, 871 (9th Cir. 2011). This involves a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989). In Graham, 490 U.S. 386 (1989), the Supreme Court explained this requires an examination of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id at 396. Because the

determination is based on the totality of the circumstances, courts may also consider other factors relevant to the particular case. Mattos v. Agarano, 661 F.3d 433, 441, 451 (9th Cir. 2011); Davis v. City of Las Vegas, 478 F.3d 1048, 1054-57 (9th Cir. 2007) (recognizing that courts also examine the availability of alternatives to the amount of force used, and the mental and emotional state of the plaintiff). "Ultimately, 'the most important' *Graham* factor is whether the individual posed an 'immediate threat to the safety of the officers or others." Mattos, 661 F.3d at 441 (citation omitted).

Here, the FAC provides few factual allegations relevant to the Graham analysis. Regarding the crime at issue, the FAC alleges Dennis's aunt called the police because he was "mentally ill, was off of his medications and had thrown a brick at her." (*FAC* ¶ 8.) The only other material allegations are that when Dennis was shot, officers mistakenly believed he was holding a shovel and Dennis was "not within striking distance approximately sixteen feet" away from the officers. (*Id.* ¶ 18.) Based on these allegations, the Court cannot find that it was reasonable to shoot Dennis five or six times. Although assault is a serious crime, there is nothing to suggest Dennis posed a serious risk to the officers when he was shot and there are no allegations suggesting he was actively resisting or attempting to flee. For these reasons, the FAC sufficiently states a cause of action for wrongful death based on the use of excessive force against Officer Keyes.

### E.   **Plaintiffs lack standing to pursue wrongful-death claims.**

In their Reply, Defendants point out that in the document Plaintiffs filed in response to the motion, Plaintiffs admit they do not know whether their mother is alive. (*Reply* 7:20–22, citing *D. Carolino Decl.* ¶¶ 4, 5.) Plaintiffs' admission contradicts the allegation in the FAC that Plaintiffs are Dennis's closest surviving relative and that "Dennis' mother and father are not living and had died prior to Decedent's Dennis Carolino's death." (*FAC* ¶¶ 32, 63.).

"A plaintiff seeking to bring a wrongful death claim bears the burden of pleading and proving his or her standing to do so." Ferry v. De Longhi America Inc., 276 F.Supp.3d 940, 945 (N.D. Cal. 2017) (quoting Soto v. BorgWarner Morse TEC Inc., 239 Cal.App.4th 165, 188 (2015)).  Under California law, a wrongful-death action may be brought by the decedent's "heirs," which means someone who was financially dependent on the decedent or the "decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession." Cal.Code.Civ.Pro. §§ 377.60(a) and (b).

Here, Plaintiffs do not allege they were financially dependent on Dennis.  And based on Plaintiffs' admission in the document filed in response to Defendants' motion, it is not clear the brothers are entitled to Dennis's property by intestate succession.  (*See Reply* 7:3–8:6.)  Additionally, because Plaintiffs have failed to file a meaningful opposition, Plaintiffs have provided no authority suggesting that under the circumstances, they are entitled to Dennis's property under California law.  Accordingly, the Court finds Plaintiffs have failed to prove standing to pursue the wrongful-death claims.

### F. Leave to amend.

Defendants' previous motion to dismiss argued Plaintiffs lacked standing to pursue the survival and wrongful-death claims in the Complaint.  As set forth in this Court's order granting Defendants' motion, Plaintiffs did not dispute that the Complaint failed to establish standing to pursue the wrongful-death claims and instead simply requested leave to amend.  (*MTD Order* 5:10–15.)

Despite being granted leave to amend, Plaintiffs have again failed to prove they have standing to pursue the wrongful-death claims.  However, because the standing issue was raised in Defendants' reply, arguably, Plaintiffs did not have an opportunity to respond.  Accordingly, in order to determine whether leave to amend would be futile, the

Court will order Plaintiffs' counsel to provide briefing on whether Dennis' brothers have standing given Plaintiffs' admission that they do not know if their mother is alive.

IV.     **CONCLUSION & ORDER**

For the foregoing reasons, the Court **GRANTS** Defendants' motion [Doc. 13] and **ORDERS** Plaintiffs to file a brief addressing the standing issue raised in Defendants' Reply.  Specifically, Plaintiffs shall address whether under California law they have standing to pursue wrongful-death claims on behalf of Dennis Carolino given that they do not know whether their mother is alive.  Plaintiffs' brief may not exceed five pages and shall be filed on or before **June 28, 2021**.  Defendants' may file a response not to exceed five pages on or before **July 2, 2021**.  Upon submission of the above briefing, the Court shall issue an order specifying whether the dismissal is with or without leave to amend.

**Plaintiffs are cautioned that if they fail to timely file the above brief, the Court will issue an order granting the motion to dismiss without leave to amend.**

**IT IS SO ORDERED.**

Dated:  June 21, 2021

_____
Hon. Thomas J. Whelan
United States District Judge